UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

      v.               :       23-CR-110 (CR)

**CORBIN OLIVER GRAY**     :

### DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO MODIFY PRE-TRIAL RELEASE CONDITIONS

Pending before this Honorable Court is Corbin Oliver Gray's Motion to Modify Pre-Trial Release Conditions. ECF 30. Specifically, Ms. Gray asks that the Court (1) eliminate the requirement that a third-party custodian be at home with her, (2) allow her to attend a church other than the Delmont United Methodist Church (which was previously approved but has since closed), and (3) permit her to view television through internet streaming services when a third-party custodian is home with her. Without taking a position on the second and third requests, the government opposes the first request. ECF 31.[1]

As to the opposed request, the issue before the Court is the necessity of the condition imposed by Magistrate Judge Upadhyaya requiring a third party custodian to remain at home with Ms. Gray at all times with the exception of the two days a week when her father is at work. As set forth in the motion, Ms. Gray has demonstrated that this condition is not necessary to assure the safety of the community, and therefore this condition is not consistent with the Bail

---

[1] Ms. Gray's father, the third-party custodian, respectfully requests that, if possible, the Court rule on Ms. Gray's motion prior to the week of July 10, because her father needs to take her brother to and from his summer camp beginning the week of July 10, has an appoint related to a new job opportunity on July 11, and has a medical appoint on July 13. Alternatively, until the Court can rule on Ms. Gray's motion, Ms. Gray requests that the court temporarily modify the conditions to allow her father to leave her home alone while he meets these obligations, provided that her father provides prior notice to the Pretrial Services Agency regarding the times when he will be out of the home.

Reform Act's requirement that the Court impose the least restrictive conditions that will assure the safety of the community and her appearance in court.

The government suggests that the condition is needed to guard against a danger to the community from Ms. Gray accessing the internet, arguing that "[t]he absence of a third-party custodian may result in the defendant's direct access to the internet while the appropriate third-party custodian is at work or somewhere away from the home." ECF 31 at 2. Although Ms. Gray's father disables the internet when he is away from the home, the government argues—with no support—that Ms. Gray could somehow possibly access to the internet from "surrounding homes" or with electronic devices through cell towers, or through other visitors while Ms. Gray's father is not home. This, at best, is an imagined danger that does not support the condition of release that her father remain at home with her. Her father confirms that he has absolutely no concern that Ms. Gray could or would access the internet when he is not home. In addition to disabling the internet, Ms. Gray's father, the third-party custodian, has ensured that there are no devices capable of accessing the internet in the home when he is not at home. Moreover, the current conditions of release permit Ms. Gray to be at home alone two days a week, and she has continued to strictly abide by the conditions of release both when her father is home and when she is alone.[2] There is no reason to believe that leaving her home alone more than two days a week will cause any danger to the community.

---

[2] Ms. Gray's diligence in abiding by the conditions of release has been evident in her meetings with undersigned counsel. Ms. Gray brings her electronic monitoring charger with her to meetings with counsel to ensure the monitor is fully charged at all times —something no other client has ever done. Ms. Gray also asked counsel to contact Pretrial Services with her before viewing any discovery, to confirm that Pretrial Services agreed that viewing videos provided in discovery was consistent with her conditions of release. Ms. Gray's father has reported similar examples of Ms. Gray's attention to the conditions of release, and that Ms. Gray has followed the conditions to the letter. When there has been any question about a condition, Ms. Gray errors on the side of caution and takes every possible precaution to ensure she is in compliance.

Although Ms. Gray could not and would not access the internet, counsel notes that the government has not specified the danger that would be presented if Ms. Gray were able to access the internet other than pointing to the charged conduct. The charges are based on Ms. Gray distributing flyers and making posts on the internet regarding her opposition to Applied Behavior Analysis theory, which the government alleges contained threats. However, she has not attempted to harm anyone at any time.

In Ms. Gray's motion, counsel noted that the government has produced in discovery a video that Ms. Gray allegedly posted on the internet after the threats are alleged to have been made, but prior to Ms. Gray's arrest, and that in that video Ms. Gray indicated that she had no intent to harm anyone. In response, the government describes statements made in the 37-minute video, expressing previous thoughts of harming ABA therapists and Autism Speaks, but the government simply ignores the long explanation in the video as to why she no longer has those thoughts, including mental health treatment, morality, self-preservation, and a desire not to bring negative attention to people with autism.[3] More importantly, the fact remains that there is no evidence that Ms. Gray ever took any action, even prior to her arrest, to harm anyone, and she has clearly stated and indicated that she will not harm anyone.

The government also notes that there are several third-party custodians, suggesting that the condition is not onerous. Each of these custodians, however, has a fulltime job. In any event, the issue before the Court is not the convenience or inconvenience to the third-party custodians, but rather the need to impose the least restrictive conditions that will assure the safety of the community.

---

[3] Consistent with the conditions of her release, Ms. Gray continues to obtain mental health therapy and finds this therapy very helpful.

The government's suggestion that eliminating the requirement that the third-party custodian remain at home with Ms. Gray at all times will result in a "complete lack of supervision," ECF 31 at 4, is not accurate. First, Ms. Gray's father is home with Ms. Gray most of the time and that will not change. He will remain the third party custodian and closely supervise Ms. Gray. He is seeking flexibility merely to be able to go to his office when necessary, attend his own medical appointments, and take his younger children to their summer camps. When he leaves the home, he ensures that Ms. Gray will have no access to the internet, and Ms. Gray continues to be monitored by GPS.

The conditions of home detention with GPS monitoring are sufficient to assure the safety of the community in most cases when detention is not appropriate, such as this one, and this case is no different. The added requirement that the third-party custodian remain at home (with the exception of two days of week during business hours) is not necessary here. The nature of the case does not support this condition—because Ms. Gray took no steps to act on any threat. Ms. Gray's history and circumstances do not support this condition—because she has no prior criminal history. And Ms. Gray has affirmatively demonstrated that this condition is not necessary—because she strictly follows all of the conditions of release, including when she has been left alone at home two days a week under the current conditions.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

4